LABARGA, J.
 

 This case is before the Court for review of the decision of the First District Court of Appeal in
 
 Montgomery v. State,
 
 34 Fla. L. Weekly D360, — So.3d —, 2009 WL 350624 (Fla. 1st DCA Feb.12, 2009). In its decision, the district court ruled upon the following question, which the court certified to be of great public importance:
 

 IS THE STATE REQUIRED TO PROVE THAT THE DEFENDANT INTENDED TO KILL THE VICTIM IN ORDER TO ESTABLISH THE CRIME OF MANSLAUGHTER BY ACT?
 

 Id.
 
 at D362, at —. We have jurisdiction.
 
 See
 
 art. V, § 3(b)(4), Fla. Const. Additionally, the First District Court of Appeal certified that its decision is in direct conflict with the decision of the Fifth District Court of Appeal in
 
 Barton v. State,
 
 507 So.2d 638 (Fla. 5th DCA 1987),
 
 quashed in part on other grounds,
 
 523 So.2d 152 (Fla.1988). We have jurisdiction.
 
 See
 
 art. V, § 3(b)(4), Fla. Const. As we explain below, we answer the certified question in the negative and hold that the crime of manslaughter by act does not require the State to prove that the defendant intended to kill the victim. Moreover, we approve the decision of the First District Court of Appeal to the extent that it held that the use of the standard jury instruction on manslaughter, which required that the State prove the defendant’s intent to kill the victim, constituted fundamental error in Montgomery’s case. First, we discuss the underlying facts and procedural background of this case.
 

 Facts and Procedural Background
 

 Steven Montgomery (Montgomery) was charged with first-degree murder following the October 2005 death of Tarnesha Ellis (Ellis). At Montgomery’s 2007 trial, the jury was instructed on first-degree premeditated murder and the lesser included offenses of second-degree murder and manslaughter. The jury convicted Montgomery of second-degree murder with a weapon, a first-degree felony punishable by life imprisonment. Montgomery was sentenced to forty-five years in state prison.
 

 Montgomery appealed his conviction and sentence to the First District Court of Appeal where he raised four issues, including a challenge to the standard jury instruction on manslaughter. Asserting that the crime of manslaughter by act does not require an intent to kill, Montgomery argued that the trial court committed fundamental error in instructing the jury on the elements of manslaughter by act because the standard jury instruction required the
 
 *255
 
 State to prove that he intended to cause the death of Ellis.
 
 [1]
 

 The district court ruled solely on the issue of the standard jury instruction on manslaughter and held that the instruction erroneously required a finding that Montgomery intended to kill Ellis. Moreover, the district court concluded that in Montgomery’s case, the use of the erroneous manslaughter instruction constituted fundamental error. Consequently, the court reversed Montgomery’s conviction and sentence for second-degree murder and remanded the case to the trial court. In doing so, the district court certified a question of great public importance and certified conflict with a decision from the Fifth District Court of Appeal.
 

 On review in this Court, the petitioner, State of Florida (the State), and Montgomery agree to the district court’s holding that a finding of manslaughter by act does not require proof that the defendant intended to kill the victim. They differ, however, on the question of whether the standard jury instruction used during the trial constituted fundamental error in Montgomery’s case.
 

 Our analysis will address three questions. First, we address whether the crime of manslaughter by act requires the State to prove intent to kill the victim. Second, we discuss whether the standard jury instruction in Montgomery’s case imposed such a requirement on the State’s burden of proof. Third, we discuss whether the use of the standard manslaughter jury instruction constituted fundamental error in Montgomery’s case.
 

 Does the Crime of Manslaughter by Act Require Proof of Intent to Kill?
 

 We conclude that under Florida law, the crime of manslaughter by act does not require that the State prove that the defendant intended to kill the victim. Relevant to our conclusion is the role of intent in cases of first-degree and second-degree murder, of which manslaughter is a necessarily lesser included offense. In order to establish first-degree premeditated murder, proof of the defendant’s intent to kill the victim is required. In fact, not only must a jury find that the defendant intended to kill the victim, it must find that the defendant did so with premeditation — a heightened level of intent. Section 782.04(l)(a), Florida Statutes (2005), defines first-degree premeditated murder as “[t]he unlawful killing of a human being” that is “perpetrated from a
 
 premeditated design to effect the death of
 
 the person killed or any human being.” (Emphasis added.)
 

 The element of premeditation distinguishes first-degree from second-degree murder. Second-degree murder is an unlawful killing that is “perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life ... without any premeditated design to effect the death of any particular individual.” § 782.04(2), Fla. Stat. (2005). Conduct that is “imminently dangerous to another and evincing a depraved mind” is characterized by “an act or series of acts that: (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another,
 
 *256
 
 and (2) is done from ill will, hatred, spite or an evil intent, and (3) is of such a nature that the act itself indicates an indifference to human life.”
 
 Bellamy v. State,
 
 977 So.2d 682, 683 (Fla. 2d DCA 2008) (quoting
 
 Duckett v. State,
 
 686 So.2d 662, 663 (Fla. 2d DCA 1996)).
 

 Manslaughter, a lesser included offense of both first-degree and second-degree murder, is defined as “[t]he killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification ... in cases in which such killing shall not be excusable homicide or murder.” § 782.07(1), Fla. Stat. (2005). Section 782.07(1) states as follows:
 

 (1) The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776 and in cases in which such killing shall not be excusable homicide or murder, according to the provisions of this chapter, is manslaughter, a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
 

 § 782.07(1), Fla. Stat. (2005).
 

 While section 782.07(1) establishes three forms of manslaughter (by act, by procurement, or by culpable negligence), our present focus is on the crime of manslaughter by act. We observe that the statute does not impose a requirement that the defendant intend to kill the victim. Instead, it plainly provides that where one commits an act that results in death, and such an act is not lawfully justified or excusable, it is manslaughter.
 

 Although in some cases of manslaughter by act it may be inferred from the facts that the defendant intended to kill the victim, to impose such a requirement on a finding of manslaughter by act would blur the distinction between first-degree murder and manslaughter. Moreover, it would impose a more stringent finding of intent upon manslaughter than upon second-degree murder, which, like manslaughter, does not require proof that the defendant intended to kill the victim. Thus, we conclude that under Florida law, the crime of manslaughter by act does not require proof that the defendant intended to kill the victim.
 

 Did the Standard Jury Instruction Require Proof of Intent to Kill?
 

 Next, we address whether the language in the standard jury instruction required proof of Montgomery’s intent to kill Ellis. At the time of Montgomery’s trial in 2007, the standard jury instruction on manslaughter by act provided in relevant part:
 

 To prove the crime of Manslaughter, the State must prove the following two elements beyond a reasonable doubt:
 

 1. (Victim) is dead.
 

 2. a.
 
 (Defendant) intentionally caused the death of (victim).
 

 [[Image here]]
 

 However, the defendant cannot be guilty of manslaughter if the killing was either justifiable or excusable homicide as I have previously explained those terms.
 

 In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death.
 

 Fla. Std., Jury Instr. (Crim.) 7.7 (2006) (emphasis added).
 
 [2]
 

 
 *257
 
 Both parties and the district court agree that this jury instruction required the jury to find that the defendant intended to kill the victim in order to convict Montgomery of manslaughter. The focus of our analysis is on the second element of the jury instruction, which provided that the State must prove that the defendant intentionally caused the death of the victim. Although the instruction also provided that “it is not necessary for the State to prove that the defendant had a premeditated intent to cause death,” we conclude that this language was insufficient to erode the import' of the second element: that the jury must find that the defendant intended to cause the death of the victim. We agree with the district court’s observation in
 
 Montgomery
 
 that a reasonable jury would believe that in order to convict Montgomery of manslaughter by act, it had to find that he intended to kill Ellis. The district court stated:
 

 The average juror would likely interpret the instruction as requiring an intent to kill, as there is no direct language regarding an intentional act. The word “intentionally” in the instruction modifies the word “caused.” Thus, the instruction would be naturally understood as requiring a finding that the defendant intended for the victim to die. The likelihood of such an interpretation is illustrated by the fact that the phrase “intentionally caused the death of’ is commonly associated with first-degree murder in charging documents.
 

 Montgomery, 34 Fla. L. Weekly at D361, — So.3d at —. Additionally, we agree with the district court’s assessment that “[t]he subsequent instruction that manslaughter does not require a premeditated design does not cure its defect, as both the court system and the average reasonable person recognize a distinction between a premeditated design and an instantaneous formation of intent.”
 
 Id.
 
 at D362, at —.
 

 Since Montgomery’s trial, this Court has approved an amendment to the standard jury instruction on manslaughter by act. The amendment, approved by this Court in December of 2008, added additional language to clarify that the requisite intent for manslaughter by act is the intent to commit an act that caused the death of the victim:
 

 In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death,
 
 only an intent to commit an act which caused death. See Hall v. State,
 
 951 So.2d 91 (Fla. 2d DCA 2007).
 

 In re Standard Jury Instructions in Criminal Cases
 
 —Report
 
 No. 2007-10,
 
 997 So.2d 403, 403 (Fla.2008). Thus, the relevant intent is the intent to commit an act which caused death, and the State is not required to prove that the defendant intended to kill the victim.
 
 [3]
 

 Did the Jury Instruction Result in Fundamental Error?
 

 Finally, we address whether the use of the standard jury instruction on manslaughter, which required Montgomery’s jury to find that he intended to kill Ellis, constituted fundamental error. Although the State and Montgomery agree that the manslaughter instruction erroneously required a jury finding that the de
 
 *258
 
 fendant intended to kill the victim, the parties disagree as to whether the use of the erroneous instruction constituted fundamental error. The State contends that notwithstanding the erroneous manslaughter jury instruction, Montgomery’s second-degree murder conviction and sentence should have been upheld on direct appeal because the use of the manslaughter instruction did not constitute fundamental error. Conversely, Montgomery argues that the use of the erroneous instruction constituted fundamental error because it deprived him of an accurate manslaughter instruction during his trial for first-degree murder.
 

 Montgomery was entitled to an accurate instruction on the lesser included offense of manslaughter. The instruction in this case, requiring the jury to find that Montgomery intended to kill Ellis, erroneously explained Florida law on manslaughter by act. Moreover, it was “pertinent or material to what the jury must consider in order to convict.”
 
 State v. Delva,
 
 575 So.2d 643, 645 (Fla.1991) (quoting
 
 Stewart v. State,
 
 420 So.2d 862, 868 (Fla.1982)). Thus, we conclude that fundamental error occurred in this case, where Montgomery was indicted and tried for first-degree murder and ultimately convicted of second-degree murder after the jury was erroneously instructed on the lesser included offense of manslaughter.
 

 We have held that “[j]ury instructions are ‘subject to the contemporaneous objection rule, and absent an objection at trial, can be raised on appeal only if fundamental error occurred.’ ”
 
 State v. Weaver,
 
 957 So.2d 586, 588 (Fla.2007) (quoting
 
 Reed v. State,
 
 837 So.2d 366, 370 (Fla.2002)). Because Montgomery did not contemporaneously object to the manslaughter instruction, we apply a fundamental error analysis here. This Court has explained the proper standard for determining whether an erroneous jury instruction constitutes fundamental error:
 

 To justify not imposing the contemporaneous objection rule, “the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.” In other words, “fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict.” Failing to instruct on an element of the crime over which the record reflects there was no dispute is not fundamental error and there must be an objection to preserve the issue for appeal.
 

 Delva,
 
 575 So.2d at 644-45 (citation omitted) (quoting
 
 Brown v. State,
 
 124 So.2d 481, 484 (Fla.1960);
 
 Stewart v. State,
 
 420 So.2d 862, 863 (Fla.1982)).
 

 Characterized by what it is not, manslaughter is considered a residual offense.
 
 See Rojas v. State,
 
 552 So.2d 914, 915 (Fla.1989). Consequently, we have held that the failure to provide a complete instruction on manslaughter may constitute fundamental error.
 
 See id.
 
 (holding that fundamental error occurred in a first-degree murder trial where the defendant was convicted of second-degree murder and where the trial court failed to instruct the jury that it could not convict the defendant of manslaughter if the killing was justifiable or excusable homicide).
 
 Cf. Pena v. State,
 
 901 So.2d 781, 788 (Fla.2005) (holding that the failure to instruct on justifiable or excusable homicide was not fundamental error where manslaughter charge was three steps removed from the offense for which the defendant was convicted and the facts of the case did “not support any jury argument relying upon the excusable or justifiable homicide instruction.”).
 

 
 *259
 

 Lesser Included Offenses
 

 Manslaughter is a category one lesser included offense of first-degree murder.
 
 [4]
 
 At trial, the jury must be instructed on category one lesser included offenses; whether the jury is instructed on category two lesser included offenses depends on the trial judge’s determination of whether the elements of “category 2 crimes may have been alleged and proved.”
 
 State v. Wimberly,
 
 498 So.2d 929, 931 (Fla.1986) (quoting Fla. Std. Jury Instr. (Crim.) notes (2d ed.1981)). We explained in
 
 Wimberly:
 

 A “necessarily lesser included offense” is, as the name implies, a lesser offense that is always included in the major offense. The trial judge has no discretion in whether to instruct the jury on a necessarily lesser included offense. Once the judge determines that the offense is a necessarily lesser included offense, an instruction must be given.
 

 Wimberly,
 
 498 So.2d at 932. Consequently, at Montgomery’s trial for first-degree murder, the trial court was required to instruct the jury on the lesser included offense of manslaughter.
 

 Second-degree murder as a lesser included offense is one step removed from first-degree murder, and manslaughter as a lesser included offense is two steps removed from first-degree murder. In
 
 Pena,
 
 we concluded that “when the trial court fails to properly instruct on a crime two or more degrees removed from the crime for which the defendant is convicted, the error is not per se reversible, but instead is subject to a harmless error analysis.”
 
 Pena,
 
 901 So.2d at 787. We explained that
 

 the significance of the two-steps-removed requirement is more than merely a matter of number or degree. A jury must be given a fair opportunity to exercise its inherent “pardon” power by returning a verdict of guilty as to the next lower crime. If the jury is not properly instructed on the next lower crime, then it is impossible to determine whether, having been properly instructed, it would have found the defendant guilty of the next lesser offense.
 

 Id.
 
 at 787. The lesser included offense of manslaughter is just one step removed from second-degree murder. Because Montgomery’s conviction for second-degree murder was only one step removed from the necessarily lesser included offense of manslaughter, under
 
 Pena,
 
 fundamental error occurred in his case which was per se reversible where the manslaughter instruction erroneously imposed upon the jury a requirement to find that Montgomery intended to kill Ellis.
 
 [5]
 

 In conclusion, we approve the decision of the First District Court of Appeal to the extent that it held that manslaughter by act does not require proof that the defendant intended to kill the victim and concluding that in this case, the use of the standard jury instruction on manslaughter constituted fundamental error. We answer the certified question in the negative and hold that the crime of manslaughter by act does not require that the State prove that the defendant intended to kill the victim. We further hold that the intent which the State must prove for the
 
 *260
 
 purpose of manslaughter by act is the intent to commit an act that was not justified or excusable, which caused the death of the victim. Moreover, we conclude that the use of the standard jury instruction on manslaughter constituted fundamental, reversible error in Montgomery’s case and requires that Montgomery receive a new trial. Given our resolution of the certified question, we do not reach the certified conflict.
 

 It is so ordered.
 

 QUINCE, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, and PERRY, JJ., concur.
 

 [1]
 

 . Montgomery also raised the following issues on direct appeal: whether the trial court erred reversibly in restricting cross-examination of the state’s expert witness as to his qualifications for rendering an expert opinion, whether the trial court erred reversibly in permitting the state, over objection, to call a witness for the primary purpose of impeaching its own witness, and whether the trial court erred reversibly in rejecting the special jury instruction offered by the defense relating to manslaughter as an act of self-defense.
 

 [2]
 

 . As noted in the district court’s opinion, although the language used by the trial court did “slightly depart” from the standard jury instruction, the instruction as given by the trial court was consistent with the standard
 
 *257
 
 instruction.
 
 See Montgomery,
 
 34 Fla. L. Weekly at D360 n. 1, at —, n. 1.
 

 [3]
 

 . In
 
 In re Amendments to Standard Jury Instructions in Criminal Cases
 
 —Instruction 7.7, No. SC10-113, 41 So.3d 853, 2010 WL 1372703 (Fla. Apr.8, 2010), on our own motion, we have authorized the use of amended instruction 7.7 on an interim basis and have established a period for comments and suggestions.
 

 [4]
 

 . In first-degree murder cases, second-degree murder and manslaughter are category one lesser included offenses.
 
 See
 
 Fla. Std. Jury Instr. (Crim.) 7.2.
 

 [5]
 

 . We note that the trial court itself expressed some concern about the sufficiency of the evidence for a conviction of first-degree murder. The trial court’s concern about the evidence supporting the charged offense of first-degree murder further underscores the importance of the jury’s accurate instruction on the lesser included offenses in this case.